UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE K.,

                        Plaintiff,                          **DECISION AND ORDER**

            v.                                              1:19-CV-01567 EAW

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

_____

## INTRODUCTION

Represented by counsel, plaintiff Michelle K. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 10), and Plaintiff's reply (Dkt. 11). For the reasons discussed below, the Commissioner's motion (Dkt. 10) is granted and Plaintiff's motion (Dkt. 8) is denied.

- 1 -

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on March 30, 2018. (Dkt. 6 at 17).[1]  In her applications, Plaintiff alleged disability beginning December 31, 2011.  (*Id.* at 17, 65).  Plaintiff's applications were initially denied on September 24, 2018. (*Id.* at 17, 85-90).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Paul Georger in Buffalo, New York, on April 26, 2019.  (*Id.* at 17, 34-63, 91).  On July 3, 2019, the ALJ issued an unfavorable decision.  (*Id.* at 14-33).  Plaintiff requested Appeals Council review; her request was denied on September 25, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-9).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.  <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. §§ 404.1509, 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).   To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on December

31, 2011. (Dkt. 6 at 19). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since December 31, 2011, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder, panic disorder, fibromyalgia, rheumatoid arthritis and obesity." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of peripheral vascular disease, hypercholesterolemia, foot fracture, ingrown toenails, vitamin D deficiency, and acute sinusitis were non-severe. (*Id.* at 20).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.*). The ALJ particularly considered the criteria of Listings 12.04, 12.06, 12.08, 12.15, and 14.09 in reaching his conclusion. (*Id.* at 20-22).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following additional limitations:

> [Plaintiff] can occasionally climb ramps and stairs, and occasionally climb ladders, ropes or scaffolds. [She] can occasionally balance, stoop, kneel, crouch, and crawl. [She] is able to perform simple, routine and repetitive tasks, is able to perform simple work-related decisions, [she] is able to occasionally interact with supervisors, coworkers, and the public.

(*Id.* at 22). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 26).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could

perform, including the representative occupations of office cleaner, small products assembler, and racker.  (*Id.* at 27)  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 27-28).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ failed to properly weigh the medical opinions of record in assessing Plaintiff's mental and physical RFC.  (Dkt. 8-1).  The Court has considered these arguments and, for the reasons discussed below, finds them without merit.

### A.   New Regulations Regarding Evaluation of Medical Opinion Evidence

"Previously, the SSA followed the 'treating physician rule,' which required the agency to give controlling weight to a treating source's opinion, so long as it was 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not 'inconsistent with the other substantial evidence' in the record."  *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631 (PKC), 2020 WL 5820566, at *3 (E.D.N.Y. Sept. 30, 2020) (quoting 20 C.F.R. § 416.927(c)(2)).  However, the regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844 (Jan. 18, 2017).  Because Plaintiff's claim was filed on March 30, 2018, the new regulations, codified at 20 C.F.R. §§ 404.1520c and 416.920c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical

sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at

§§ 404.1520c(b), 416.920c(b).  "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted).  Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may—but is not required to—explain how he considered the remaining factors.  *Id.*  However, when the opinions offered by two or more medical sources about the same issue are "both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ will articulate how he considered the remaining factors in evaluating the opinions.  *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).  "Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'"  *Shawn H. v. Comm'r of Soc. Sec.*, No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020) (alteration in original) (quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

### B.   Assessment of Plaintiff's Mental RFC

With respect to Plaintiff's mental RFC, the ALJ considered the following opinions: (1) opinions from October 2017 and October 2018 from psychiatric mental health nurse

practitioner Tracy Raynor ("NP Raynor"); (2) several conclusory statements that Plaintiff was unable to work by an unidentified nurse practitioner at the Springville Community Counseling Center; (3) the opinion of consultative examiner Dr. Gregory Fabiano; and (4) the opinion of state agency reviewing psychologist Dr. T. Bruni.  (Dkt. 6 at 25-26).  The ALJ found Dr. Fabiano's opinion partially persuasive and the remainder of the opinions not persuasive.  (*Id.*).

Plaintiff does not challenge the ALJ's assessment of any of these medical opinions. Instead, she argues that because the ALJ did not find any opinion regarding her mental functioning fully persuasive, he impermissibly relied on his "own lay interpretation of the medical evidence" in assessing her mental RFC.  (Dkt. 8-1 at 21-22).  This argument is without merit, because the ALJ's mental RFC assessment derives from the limitations identified by Dr. Fabiano and Plaintiff's own testimony.

Dr. Fabiano examined Plaintiff on July 20, 2018.  (Dkt. 6 at 607).  Dr. Fabiano diagnosed Plaintiff with "major depressive disorder, recurrent episodes, moderate," social anxiety disorder, and panic disorder.  (*Id.* at 611).  Dr. Fabiano opined that Plaintiff had mild limitations in her ability to understand, remember, and apply simple directions and instructions, and moderate limitations in her abilities to "understand, remember, and apply complex directions and instructions; interact adequately with supervisors, co-workers, and the public; regulate emotions, control behavior, and maintain well-being."  (Dkt. 6 at 610-11).  Dr. Fabiano further concluded that Plaintiff's psychiatric conditions were not "significant enough to interfere with [Plaintiff's] ability to function on a daily basis."  (*Id.* at 611).  The ALJ found Dr. Fabiano's opinion "partially persuasive," but ultimately

concluded that it did not "capture the full intensity, frequency, or limiting effect of [Plaintiff's] symptoms." (*Id*. at 26).

As noted above, the ALJ ultimately concluded that Plaintiff was capable of performing simple, routine, and repetitive tasks, making simple work-related decisions, and occasionally interacting with supervisors, coworkers, and the public. (*Id*. at 6). This finding is consistent with the specific limitations contained in Dr. Fabiano's opinion. *See Jacqueline L. v. Comm'r of Soc. Sec.*, No. 6:19-CV-06786, 2021 WL 243099, at \*7 (W.D.N.Y. Jan. 26, 2021) ("[T]he ALJ's limiting Plaintiff to occasional interaction with supervisors, coworkers and the general public, as well as low stress work, defined as work involving occasional decision making, is consistent with the medical evidence in the record and is supported by the opinion of Dr. Deneen, who found that Plaintiff would be moderately limited in interacting with others and regulating her emotions, behavior, and well-being."); *Collins v. Comm'r of Soc. Sec.*, No. 19-CV-00298, 2020 WL 5742677, at \*4 (W.D.N.Y. Sept. 24, 2020) (medical source's opinion that the plaintiff had "moderate limitations in her ability to complete a normal workday and workweek without interruptions, accept instructions and respond appropriately to criticism from supervisors, and set realistic goals or make plans independently of others" was consistent with limitation to "simple, routine repetitive work, simple decisions, and only occasional interactions with supervisors and coworkers").

Further, to the extent that the ALJ extended Plaintiff the benefit of the doubt and assessed a mental RFC that was more restrictive than required by Dr. Fabiano's opinion, this was not error. *See Kearney v. Berryhill*, No. 1:16-CV-00652-MAT, 2018 WL

5776422, at *5 (W.D.N.Y. Nov. 2, 2018) ("The ALJ explained that he had credited aspects of Plaintiff's testimony regarding her limitations, and so assessed a somewhat more restrictive RFC than identified by the consultative examiners. The Court finds no error in this determination by the ALJ.").  In particular, while Dr. Fabiano opined that Plaintiff had no "evidence of limitation in [her] ability to use reason and judgment to make work-related decisions" (Dkt. 6 at 611), the ALJ limited her to making only simple decisions.  The ALJ's determination is directly supported by Plaintiff's hearing testimony that she has "trouble making decisions."  (*Id*. at 46); *see Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *6 (W.D.N.Y. Sept. 16, 2020) ("[The plaintiff] essentially argues that the ALJ was wrong to accept portions of her testimony regarding her limitations, which were not covered in a medical source opinion.  But this does not constitute reversible error.").

Contrary to Plaintiff's argument, the ALJ did not base his assessment of Plaintiff's mental RFC on his own lay opinion, but considered the record as a whole, including Dr. Fabiano's opinion and Plaintiff's own testimony.  This was not erroneous, and remand is not required on this basis.

### C.   Assessment of Plaintiff's Physical RFC

The ALJ further did not err in assessing Plaintiff's physical RFC.  In making his assessment, the ALJ found the opinions of consultative examiner Dr. Nikita Dave and state agency reviewing physician Dr. H. Miller persuasive, and found the opinion of Plaintiff's primary care physician Dr. Elizabeth Weingarten not persuasive.  (Dkt. 6 at 25).  Plaintiff contends that Dr. Dave's and Dr. Miller's opinions were not consistent with the medical

evidence of record, and that the ALJ failed to appropriately consider the persuasiveness of Dr. Weingarten's opinion.  (Dkt. 8-1 at 25-28).

Plaintiff's arguments regarding Dr. Dave's and Dr. Miller's opinions warrant little discussion.  While Plaintiff has identified various evidence of record that she contends supports the conclusion that she is more limited than these physicians opined, "whether there is substantial evidence supporting the [plaintiff's] view is not the question here; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013).  As the ALJ explained, Dr. Dave's and Dr. Miller's opinions were amply supported by Dr. Dave's examination of Plaintiff and by Plaintiff's medical records.  In particular, Dr. Dave's examination in July 2018 revealed full flexion, extension, and rotary movement of the cervical spine, full extension and rotary movement of the lumbar spine, bilaterally negative straight leg raising tests, full range of motion in the upper and lower extremities, 5/5 strength in the upper and lower extremities, 5/5 grip strength bilaterally, and no sensory deficits.  (Dkt. 6 at 615-16). Plaintiff's rheumatologist stated in 2015 and 2016 that her symptoms were "well-controlled" and that she had no signs of synovitis or joint deformity.  (*Id*. at 598-99). Imaging studies of Plaintiff's hands and feet in May 2017 and an x-ray of the lumbar spine in July 2018 revealed only mild abnormalities.  (*Id*. at 586-87, 616).  Further, Plaintiff's reported daily activities including yoga, yardwork, and motorcycle riding.  (*Id*. at 24).  All of this evidence is consistent with Dr. Dave's and Dr. Miller's conclusions that Plaintiff is capable of a limited range of light work.  Accordingly, the ALJ was well within his discretion to find Dr. Dave's and Dr. Miller's opinions persuasive.

Further, the ALJ did not err in assessing Dr. Weingarten's opinion.  Dr. Weingarten, Plaintiff's primary care physician, authored a letter dated March 10, 2019, in which she stated that Plaintiff was no longer able to work due to pain and that Plaintiff had "difficulty even going up and down stairs and trouble with balance."  (*Id*. at 6).  Dr. Weingarten noted that Plaintiff was being "managed by a rheumatologist and a psychiatrist for these issues." (*Id*. at 863).  The ALJ found this opinion not persuasive, explaining that it "contains limited explanation of [Plaintiff's] specific abilities and does not include the medical documentation that lead to these conclusions."  (*Id*. at 25).  The ALJ further noted that Dr. Weingarten had indicated that Plaintiff's "care is deferred to other medical professionals including a rheumatologist and psychiatrist."  (*Id*.).

Plaintiff contends that the ALJ should have found Dr. Weingarten's opinion more persuasive because it was offered by a treating physician.  (Dkt. 8-1 at 29).  However, as the ALJ noted, Dr. Weingarten's own letter indicated that she was not the physician treating Plaintiff for her allegedly disabling conditions.  The ALJ was not required to afford Dr. Weingarten's opinion extra consideration on this basis.

The Court is also not persuaded by Plaintiff's contention that Dr. Weingarten's opinion was more consistent with the evidence of record than Dr. Dave's and Dr. Miller's opinions.  Again, Plaintiff merely cites to evidence that she feels the ALJ should have weighed more heavily.  Plaintiff's disagreement with the ALJ's assessment of the evidence of record simply is not a basis for remand.  *See Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-737-DB, 2020 WL 3447800, at *5 (W.D.N.Y. June 24, 2020) ([M]ere disagreement with the ALJ's findings does not warrant remand.").

The Court further notes that the ALJ's RFC finding is essentially consistent with the specific limitations identified by Dr. Weingarten.  In particular, the ALJ limited Plaintiff to jobs that involved only occasionally climbing stairs and ramps and only occasionally stooping or crouching, consistent with Dr. Weingarten's opinion that Plaintiff had "difficulty" in climbing stairs and "trouble" balancing.  Plaintiff has failed to explain how the ALJ's assessment would or should have changed had he found this portion of Dr. Weingarten's opinion persuasive.  *See Lesanti v. Comm'r of Soc. Sec.*, 436 F. Supp. 3d 639, 650 (W.D.N.Y. 2020) ("It is ultimately Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ.").  As to Dr. Weingarten's opinion that Plaintiff was unable to work, the regulations applicable to Plaintiff's claim specifically provide that such a statement is not persuasive.  *See* 20 C.F.R. §§ 404.1520b(c), 416.920b(c) (statements on the ultimate issue of disability are "inherently neither valuable nor persuasive").

Finally, the Court rejects Plaintiff's argument that the ALJ was obligated to recontact Dr. Weingarten prior to issuing his decision.  "The duty to recontact arises only if the ALJ lacks sufficient evidence in the record to evaluate the doctor's findings. . . . Where the record before the ALJ is complete enough to form a determination as to plaintiff's disability, the ALJ is not required to recontact a medical source." *Raftis v. Comm'r of Soc. Sec.*, No. 5:17-CV-0514 (WBC), 2018 WL 1738745, at *6 (N.D.N.Y. Apr. 6, 2018) (citing *Guillen v. Berryhill*, 697 F. App'x 107, 108 (2d Cir. 2017)).  Here, the record contained sufficient evidence, including Dr. Dave's and Dr. Miller's opinions, to allow the ALJ to assess Plaintiff's physical RFC.  The ALJ was accordingly under no

obligation to recontact Dr. Weingarten. *See Varalyn B. v. Commissioner*, No. 5:18-CV-978(ATB), 2019 WL 5853388, at *5 (N.D.N.Y. Nov. 8, 2019) ("Despite the duty to develop the record, remand is not required where the record contains sufficient evidence from which the ALJ can assess the claimant's RFC.").

In sum, the Court finds that the ALJ appropriately considered the medical opinions of record and that his conclusions regarding their persuasiveness were supported by substantial evidence. Accordingly, there is no basis for the Court to disturb the Commissioner's finding of non-disability.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 19, 2021
          Rochester, New York